UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| U.S. SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WINNING COLORS, INC., et al.,<br><br>Defendants. | Case No. 23-cv-01494-AMO<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 92, 93 |

Plaintiff U.S. Specialty Insurance Company ("USSIC") brings this action seeking a declaratory judgment that it does not owe a duty to defend or duty to indemnify Defendant Winning Colors, Inc. for claims arising out of a certain property fire.  The First Amended Complaint asserts four causes of action: 1) declaratory judgment that USSIC has no duty to defend Winning Colors against claims arising out of the relevant property fire; 2) declaratory judgment that USSIC has no duty to indemnify Winning Colors for any such claims; 3) declaratory judgment that USSIC has no duty to defend Winning Colors arising out of its excess policy; and 4) declaratory judgment that USSIC has no duty to indemnify Winning Colors under that same excess policy.

Before the Court are cross-motions for summary judgment.  USSIC has filed a motion for summary judgment, or in the alternative, partial summary judgment, as to all four causes of action. Dkt. No. 92.[1]  Defendants D2 Properties of Florida LLC, Rob Desino, Chris Desino, and Andrew Nicholls have filed a motion for partial summary judgment as to the duty to defend.  Dkt. No. 93. Defendants Winning Colors and Seneca Insurance Company, Inc. have joined the other defendants

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

in the motion for partial summary judgment. *See* Dkt. Nos. 96-97. Having considered the parties' submissions, and with the benefit of oral argument on February 10, 2026, the Court **DENIES** USSIC's motion. Defendants' cross-motion is **GRANTED**.

**FACTUAL BACKGROUND**

The following summary of relevant facts is undisputed.

### A.      Events Leading to the Fire at 244-246 Divisadero

Winning Colors provided painting, decorating, wood stripping, and dry rot repairs to restore Victorian homes. Dkt. No. 92-2 at 11. It was a California-licensed painting and decorating contractor from 1995 to 2024. Dkt. No. 92-4 at 8. Winning Colors no longer has any remaining assets and was dissolved in 2024 after filing for Chapter 7 bankruptcy. *Id*. at 10.

The instant dispute relates to a fire that occurred at 244-246 Divisadero Street, San Francisco ("the Property"), a multi-unit building including apartments and a restaurant space. On July 6, 2022, Winning Colors entered into a contract with Andrew Nicholls and D2 Properties of Florida LLC. Dkt. No. 92-2 at 62. Per the contract, Winning Colors would provide various surface preparation, caulking, window glazing, epoxy application, and painting services at the Property. *Id*. at 59-60.

On July 14, 2022, Winning Colors separately entered into an Independent Contractor Agreement with Rolando Ramirez d/b/a Golden Colors Painting. *Id*. at 65. Under the Agreement, Golden Colors Painting would assist Winning Colors in completing the work at the Property by priming and painting two street sides of the building. *Id*. While performing those services, Ramirez sent text messages with photos to Nita Riccardi, the owner of Winning Colors, advising that water was pooling on some of the bay windows. *Id*. at 19. This indicated the "water tables" were not functioning properly to remove excess water. *Id*. A water table is "a horizontal band that runs along the side of the building that protrudes outward and serves as [*sic*] both a decorative and functional purpose to deflect water from the side of the building." *Id*. at 14-15.

To solicit a pricing estimate for repairs of the water tables, Winning Colors contacted Manuel Garcia of Last Detail Roofing. *Id*. at 21-24. On July 28, 2022, Riccardi sent text messages to Garcia asking him to take a look at the Property and to discuss the repair details with

2

Ramirez on site. *Id*. at 41. On August 2, 2022, she received a pricing estimate of $19,600 via text message. *Id*. at 90. Last Detail Roofing's work would include some dry rot repair, replacement of waterproofing, and installation of "cornered edge flashing" to prevent pooling of water on the water tables. *Id*. at 43. Subsequently, Riccardi emailed Nicholls noting an updated cost estimate for "roofing and drainage issues" of $24,000. *Id*. at 72. This estimate included the $19,600 cost from Last Detail Roofing as well as additional costs for dry rot repair performed by Winning Colors. *Id*. at 27. These costs were included within Change Order #1 on August 25, 2022, an update to the budget submitted by Winning Colors to Nicholls following a survey of the Property. *Id*. at 74. Change Order #1 also included a 15% contractor fee, which applied to the total value of the estimate from the Order, including the contractor work to be performed by Last Detail Roofing. *Id*. at 31-32.

On August 26, 2022, Garcia called Riccardi notifying her that he was securing a permit for the work on the water tables. *Id*. at 48. The permit described Last Detail Roofing's work on the Property as follows:

> REROOFING: BAY WINDOW ROOFS: REMOVE (E) ROOFING MATERIAL. INSTALL 1 LAYER OF FIBER GLASS ROOFING BASE SHEET, PEEL AND STICK ICE AND MOISTER AND 1 LAYER OF GTA APP MODIFIED BITUMEN TORCH SYSTEM.

Dkt. No. 92-4 at 13. Riccardi was not aware Garcia and his team would be using torches for the work. Dkt. No. 92-2 at 44-45. Three days after the text exchange regarding the permit, Riccardi texted Garcia while at the Property. *Id*. at 95. Per deposition testimony, Riccardi was there performing some work, including application of a clear epoxy sealer to the west side of the exterior, above the bay windows, around certain nail heads. Dkt. No. 93-1 at 43-45. Garcia responded to her text message and noted there were four workers on site at that time, which Riccardi confirmed. *Id*.

A fire broke out at the Property on August 31, 2022. Dkt. No. 92-4 at 15. According to the San Francisco Fire Department's Incident Report, the fire originated from the fourth-floor exterior of the Property, and a welding torch was involved in the ignition. *Id*. The Fire Department released a more detailed report on October 24, 2022. Dkt. No. 95 at 6. Therein, the

United States District Court
Northern District of California

Department concluded the physical evidence was consistent with fire origination on the roof of the bay window on the third floor of the southwest side of the Property. *Id*. at 12. The source of the fire was "inadvertent application of an open flame from a heat torch to dry wood." *Id*. Sometime after the fire, Riccardi learned Last Detail Roofing used bitumen torches to adhere certain material for waterproofing. Dkt. No. 92-2 at 53-55.

### B.    Underlying Actions

Following the fire, former tenants of the Property sued Winning Colors in two habitability lawsuits. The lawsuits are *Mona Milford, et al. v. D2 Properties of Florida LLC, et al.*, San Francisco Superior Court Case No. CGC-22-603644, filed on December 22, 2022 (the "*Milford* Action") and *Zedekiah Schild v. D2 Properties of Florida, LLC, et al.*, San Francisco Superior Court Case No. CGC-23-604855, filed on February 28,2023 (the "*Schild* Action"). Dkt. No. 92-4 at 18, 29. Nicholls and D2 Properties filed a cross-complaint naming Winning Colors in the *Milford* Action. *Id*. at 43. USSIC is currently defending Winning Colors in the *Milford* Action and the *Schild* Action pursuant to a reservation of rights. Dkt. No. 92 at 13.

USSIC initially named 26 defendants in this action for declaratory relief. Dkt. No. 21 ¶ 1. Subsequently, USSIC voluntarily dismissed its claims against 16 of the defendants, including: Mona Milford, Bruce Hunter, Orion Kellogg, Julian Benebides, Alicia Rivas Peraza, Cindy Garcia, Arcadio Garcia, Rosa Estela Gonzalez, Leah Pulchalski, Agnes Palotas, Lenni Rojanapairat, Anu Rojanapairat, Phuket Thai Restaurant, Synergy Enterprises, Inc., Pacific Realty & Investments LLC, Manuel Garcia, and Last Detail Roofing. *See* Dkt. Nos. 29-31, 55-58. Further, USSIC and Defendant Zedekiah Schild entered a stipulation, approved by the Court, that Schild agrees to be bound by the Court's coverage determination in this case and need not answer or continue to appear in the action. Dkt. No. 53. A similar stipulation was approved by the Court as to Defendant Pacifisia Investment & Realty Co. Dkt. No. 47.

So, seven defendants remain, including Winning Colors, the policy holder for the insurance contract at issue in this litigation.

### C.    Commercial General Liability Insurance Policy

USSIC issued a commercial general liability insurance policy to Winning Colors under

United States District Court
Northern District of California

4

United States District Court
Northern District of California

Policy No. U21AC84546-07, effective November 5, 2021, to November 5, 2022 ("CGL Policy"). Dkt. No. 92-3 ¶ 2. In addition, USSIC issued Commercial Excess Liability Policy No. U21AC84546-07 to Winning Colors, effective July 5, 2022, to November 5, 2022 ("Excess Policy"). *Id*. at 87. The parties have identified the relevant provisions of these two policies for purposes of this dispute:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages because of "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

> **(1)** The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE; and

> **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

> **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

> **(3)** Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or

5

> "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

*Id*. at 13.  The CGL Policy also includes an endorsement entitled: "Limitation To Classifications Or Operations Described."  *Id*. at 56.  This limitation to the coverage enumerated in the CGL Policy states the following:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**LIMITATION TO CLASSIFICATIONS OR OPERATIONS DESCRIBED**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

CLASSIFICATION(S) OR OPERATION(S):

Painting Contractor

This classification is limited to the surface preparation and application of any of the following: paints, papers, textures, fabrics, pigments, oils, turpentines, japans, driers, thinners, varnishes, shellacs, stains, fillers, waxes, adhesives, water and any other vehicles, mediums and materials which adhere by evaporation and may be mixed, used and applied to the surfaces of walls and structures.

The following operations are not included in this classification:

 - Painting of steel structures or bridges
 - Work on streets, roads or highways
 - Sand blasting
 - Contractors in the business of waterproofing basements or foundations to prevent the intrusion of water
 - Any roofing related operations

The following operations are not included in this classification:

- Any actual or alleged liability arising out of ?your work? [*sic*] or ?your product? [*sic*] for which any federal, state or local agency requires ?your work? [*sic*] or ?your product? [*sic*] to be completed by a licensed contractor, and the required license was not secured, was revoked, was suspended or expired prior to the commencement of that work. This exclusion shall further apply to any insured which has its license revoked, suspended or expired during the work for which it was required.

- Any work or operations performed on your behalf by an unlicensed subcontractor if the subcontractor?s [*sic*] license was not secured, was

6

revoked, was suspended or expired prior to the subcontractor commencing work for the insured.

The following operations are not included in this classification:

- Any operations performed in the state of New York whether such operations are performed by you or on your behalf.

**A. SECTION I – COVERAGES, COVERAGE A.**
**BODILY INJURY AND PROPERTY DAMAGE**
**LIABILITY, 1. Insuring Agreement, b.** is
amended and the following added:

(4) The "bodily injury" or "property damage" is caused by or results from the classification(s) or operation(s) described in the Schedule.

**B. SECTION I – COVERAGES, COVERAGE B**
**PERSONAL AND ADVERTISING INJURY**
**LIABILITY, 1. Insuring Agreement, b.** is
amended and the following added:

This insurance applies to "personal and advertising injury" caused by an offense in the course of the classification(s) or operation(s) described in the Schedule.

**ALL OTHER TERMS AND CONDITIONS REMAIN**
**UNCHANGED**

*Id*. at 56-57.  Finally, the Excess Policy operates to provide additional coverage:

**SECTION I – COVERAGES**

**1. Insuring Agreement**

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.

We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance".

When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other suit seeking damages for "injury or damage".

However, we will have no duty to defend the insured against any suit seeking damages for which insurance under this coverage part does not apply.

*Id*. at 79.  The Excess Policy also contains a further limitation on its coverage:

The insurance provided under this Coverage Part will follow the same

7

provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".

*Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on a "claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

"On cross motions for summary judgment, the burdens faced by opposing parties vary with the burden of proof they will face at trial." *Marker v. U.S. Dep't of Educ.*, No. 23-CV-05873-JSC, 2026 WL 145845, at *3 (N.D. Cal. Jan. 20, 2026) (quotation omitted). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Id.* (citing *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)). "On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible 'evidence negating an essential element of the nonmoving party's case,' or by showing, 'after suitable discovery,' that the 'nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.'" *Deckers Outdoor Corp. v. Last Brand, Inc.*, No. 23-CV-04850-AMO, 2025 WL 2822685, at *2 (N.D. Cal. Oct. 2, 2025) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000)). "When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. *Id.* (citing Fed. R. Civ. P.

United States District Court
Northern District of California

56(c), (e)). "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

When deciding a summary judgment motion, courts must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor. *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). However, when a nonmoving party fails to produce evidence rebutting the moving party's showing, then summary adjudication is proper. *Nissan Fire*, 210 F.3d at 1103 ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."). Lastly, "[t]he court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact." *Deckers Outdoor Corp.*, 2025 WL 2822685, at \*2 (citing *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)).

## DISCUSSION

The Court first addresses the parties' requests for judicial notice and USSIC's objections to evidence submitted by Defendants. Then, the Court turns to the language of the CGL Policy, and the evidence submitted, to determine whether the parties have met their respective burdens to merit summary judgment.

## I.    REQUESTS FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts often take judicial notice of "matters of public record" and court filings. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Defendants request the Court take judicial notice of a San Francisco Fire Department Incident Report dated October 22, 2022. Dkt. No. 95 at 2. Plaintiff does not object. This publicly available department report is not subject to reasonable dispute and is properly noticeable. *See, e.g.*, *Kunde Enters., Inc. v. Nat'l Sur. Corp.*, 608 F. Supp. 3d 883, 895 (N.D. Cal. 2022) (*citing

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010)). USSIC requests judicial notice of eight documents, including California state agency records of certain business licenses, a San Francisco Fire Department Incident Report, and three complaints from the *Milford* and *Schill* Actions. Dkt. No. 92-4. Defendants do not object. The agency records and incident report are not subject to reasonable dispute, and so the Court takes judicial notice of the documents and their contents. As for the complaints, the Court takes notice of the existence of the disputes, as well as the allegations contained therein, since a determination of an insurer's duty to defend requires the Court "to compare the allegations of the complaint—and '[f]acts extrinsic to the complaint'—with the policy terms to see if they 'reveal a possibility that the claim may be covered by the policy.'" *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002).

## II.     OBJECTIONS TO EVIDENCE

In accordance with the Court's Civil Standing Order, USSIC submits a single brief to serve as both its opposition to Defendants' motion for partial summary judgment and as its reply against Defendants' opposition to USSIC's own motion for summary judgment. *See* Dkt. No. 98. In addition to that brief, USSIC separately filed a series of objections to evidence presented by Defendants in support of their motion. Dkt. No. 99.

These objections are both procedurally and substantively improper. First, Civil Local Rule 7-3(a) states: "Any opposition to a motion may include a proposed order, affidavits, or declarations, as well as a brief or memorandum under Civil L.R. 7-4. ***Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum***." Civ. L. R. 7-3(a) (emphasis added). USSIC did not comply with this provision of the Local Rules.

Second, to the extent USSIC objects to the contents of expert declarations submitted by Defendants, the proper format for such a challenge would be a motion to exclude the expert witness, i.e. a *Daubert* motion. Per the Court's Civil Standing Order, Section G, there are certain limits to such motions, absent leave of Court, and the party must propose a proper briefing schedule. USSIC did not comply with this provision of the Court's Civil Standing Order. Indeed, the Court assumed neither party would be submitting expert declarations, as was stated in the Court's June 26, 2025 Scheduling Order, and which justified the Court not setting a discovery

10

deadline at that time. *See* Dkt. No. 91.

Third, USSIC asserts its objections under the California Evidence Code, citing only California state law authority in support. However, "[p]ursuant to *Erie* and its progeny, federal courts sitting in diversity apply state substantive law and federal procedural law. Most evidentiary rules are procedural in nature, and the Federal Rules of Evidence 'ordinarily govern in diversity cases.'" *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (internal citations omitted). Here, the Federal Rules of Evidence govern, not the California Evidence Code. Consequently, USSIC has not put forward a legal basis to support its objections.

Therefore, USSIC's objections are **OVERRULED**.

## III.    USSIC'S DUTY TO DEFEND

Having resolved the parties' requests for judicial notice and evidentiary objections, the Court turns to the substantive issue of whether the CGL Policy requires USSIC to defend the *Milford* and *Schild* Actions. The parties agree California law governs the interpretation of the Policy.

The California Court of Appeal in *Mirpad, LLC v. California Ins. Guarantee Assn.*, 132 Cal. App. 4th 1058 (2005), sets out the framework for insurance contract interpretation:

> [I]nterpretation of an insurance policy is a question of law. While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. Thus, the mutual intention of the parties at the time the contract is formed governs interpretation. If possible, we infer this intent solely from the written provisions of the insurance policy. If the policy language is clear and explicit, it governs. When interpreting a policy provision, we must give its terms their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage. We must also interpret these terms in context, and give effect to every part of the policy with each clause helping to interpret the other.

*Id*. at 1069 (cleaned up) (internal citations omitted). As to USSIC's duty to defend against the underlying lawsuits, "[t]he determination whether the insurer owes [such a duty] usually is made in the first instance by comparing the allegations of the [third-party] complaint with the terms of the policy." *Montrose Chem. Corp. v. Superior Ct.,* 6 Cal. 4th 287, 295 (1993). "In making this determination, the coverage provisions of the policy are liberally construed in favor of the insured

United States District Court
Northern District of California

United States District Court
Northern District of California

and the exclusions from coverage are narrowly construed against the insurer. The duty to defend is excused only 'if the third party [*sic*] complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.'" *Charles E. Thomas Co. v. Transamerica Ins. Grp.,* 62 Cal. App. 4th 379, 382 (1998) (internal citation omitted). Ultimately, "[t]he test is not 'whether noncovered acts predominate in the third party's action, but rather . . . whether there is any potential for liability under the policy.'" *Pension Tr. Fund for Operating Eng'rs*, 307 F.3d at 949 (citation omitted). "Instead, California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." *Id*. (citation omitted).

Beginning with the language of the CGL Policy, the insurer extends coverage for "bodily injury" or "property damage" "caused by an 'occurrence' that takes place in the 'coverage territory.'" Dkt. No. 92-3 at 13. The parties do not appear to dispute the allegations in the underlying actions related to the fire at the Property fall within this language. Rather, the site of dispute exists with regard to the language of the "Limitation" to the Policy. This Limitation amends Section 1.b. of the Insuring Agreement to add an additional requirement: "The 'bodily injury' or 'property damage' is caused by or results from the classification(s) or operation(s) described in the Schedule." *Id*. at 57. So, the Court must look to the "Classification" language as well. The "Classification" language limits coverage for Winning Colors to its work as a "Painting Contractor," which is defined as follows:

> This classification is limited to the surface preparation and application of any of the following: paints, papers, textures, fabrics, pigments, oils, turpentines, japans, driers, thinners, varnishes, shellacs, stains, fillers, waxes, adhesives, water and any other vehicles, mediums and materials which adhere by evaporation and may be mixed, used and applied to the surfaces of walls and structures.
>
> The following operations are not included in this classification:
>
> - Painting of steel structures or bridges
> - Work on streets, roads or highways
> - Sand blasting
> - Contractors in the business of waterproofing basements or foundations to prevent the intrusion of water
> - Any roofing related operations

*Id*. at 57. Thus, the Court must determine whether the "property damage" at 244-246

Divisadero—that is the subject of the *Milford* and *Schild* Actions—was "caused by or resulted from" Winning Colors' work as a "Painting Contractor." On this record, USSIC has failed to demonstrate no reasonable trier of fact could find the property damage was "caused by or results from" covered work.

To merit summary judgment, USSIC must establish, as a matter of law, that "the third party [*sic*] complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.'" *Charles E. Thomas Co.,* 62 Cal. App. 4th at 382. USSIC has not carried this burden. Defendants have produced evidence that, at minimum, creates a material dispute of fact as to Winning Colors' role in the fire at the Property. To start, Defendants submit the deposition testimony of Nita Riccardi, who testified that she applied one gallon of a clear epoxy product to the surface of the Property, on the west side of the building, above the bay windows, around certain nail heads. Dkt. No. 93-1 at 63, 81-84. This epoxy product is considered "highly flammable" and should be kept away from sparks and open flames. *Id*. at 101-02. Per Riccardi's testimony, she applied this product on August 29—two days before the fire—in an area where the San Francisco Fire Department's Incident Reports indicate the fire originated. *See id*. at 44; *see also* Dkt. No. 95 at 9.

Defendants also submit the expert declaration of Peter Lloyd, "a Senior Lab Engineer at Berkeley Engineering and Research, Inc." with over 35 years of experience on the mechanical side of pharmaceutical research and development. Dkt. No. 93-2 ¶ 1. His experience as a "hands-on engineer, experimenter, inventor, machinist, carpenter and mechanic" have given him significant familiarity with the mechanism of epoxy products. *Id*. He conducted an investigation by applying different quantities of the clear epoxy solution used by Riccardi to test combustibility of wood planks. *Id*. ¶¶ 6-18. From this testing, he concluded the epoxy-coated wood ignited more easily than non-coated wood, and that this increased flammability persisted even within two days following initial application. *Id*. ¶¶ 19-20. Riccardi's testimony that she applied a highly flammable substance to an area near where the fire broke out, and Lloyd's expert declaration indicating the epoxy's increased flammability lasts days after application, raise issues that the property damage could conceivably fall within the CGL Policy's coverage. Indeed, allegations of

United States District Court
Northern District of California

13

Winning Colors' negligence in causing the fire are included in both the *Schild* Action's Complaint and the Cross-Complaint in the *Milford* Action. *See* Dkt. No. 92-4 at 33 (allegations by Schild of Winning Colors' negligence in performing its painting operations); Dkt. No. 92-4 at 46-47 (same in *Milford* Action).

Of course, the language of the CGL Policy's Limitation still applies, so the Policy would only cover Winning Color's activity as a "Painting Contractor." Applying a clear epoxy solution to the exterior of the Property clearly falls within the definition of "Painting Contractor." As Lloyd's expert declaration states: In an epoxy solution, "[t]he total volatile solvent content of the mixed material is greater than 70%." Dkt. No. 93-2 ¶ 9. "It is then applied by spraying, brushing, rolling, pouring, or other means, and then the solvent evaporates, leaving the solid, thin, cured epoxy coating adhered to the surfaces of walls and structures." *Id.* This mechanism of action fits neatly within the CGL Policy's definition, which includes "materials which adhere by evaporation and may be mixed, used and applied to the surfaces of walls and structures." Dkt. No. 92-3 at 57. Given the facts available to USSIC through the *Milford* and *Schild* Actions, it has not shown there is "no conceivable theory" by which Winning Colors' actions may fall within the Policy's coverage. *Charles E. Thomas Co.,* 62 Cal. App. 4th at 382.

None of USSIC's arguments persuade the Court otherwise. First, USSIC asserts "[t]here is no evidence that Winning Colors applied epoxy to the location where the fire occurred, the amount, the methodology, the consistency, or the ventilation," and "[t]here is no evidence that the epoxy was not sufficiently cured." Dkt. No. 98 at 2. Having reviewed that evidence, the Court rejects this unsupported assertion.

Second, USSIC argues Defendants' theory fails because Defendants' experts concluded "Last Detail Roofing's torching was the sole cause of the fire," and so the epoxy could not have played a role in the outcome. *Id.* Not so. Expert witness Geoff Hazard's fire cause analysis does not discuss epoxy and concludes:

> [T]he probable ignition source was the open flame of a propane torch. The torch was utilized by the onsite workers to apply the Torch Roll materials and metal flashing. No other ignition sources were present in the area of fire origin.

14

Dkt. No. 93-3 at 26. Hazard does not opine either way as to the involvement of epoxy, and at most, this fire cause analysis—combined with the testimony of expert Peter Lloyd—creates a material dispute of fact that precludes a grant of summary judgment here.

Third, USSIC contends the bitumen torch work from Last Detail Roofing was a "roofing related operation" excluded from coverage under the Policy. Dkt. No. 92 at 20. Assuming, *arguendo*, that it were, that does not impact the Court's analysis of whether Winning Colors' actions fall within the Policy. USSIC relies on its assumption that the *only* cause of the fire at the Property was the bitumen torch, ignoring the evidence suggesting the epoxy may have also contributed to ignition. Indeed, USSIC ignores the language of the Limitation, which provides coverage for property damage "that is caused by ***or results from***" the Classification. Dkt. No. 92-3 at 57 (emphasis added). Under California law, "[t]he term 'resulting from' 'broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship.'" *Mosley v. Pac. Specialty Ins. Co.*, 49 Cal. App. 5th 417, 424 (2020) (citation omitted). "Thus, the term 'resulting from' is generally equated . . . with origination, growth or flow from the event." *Id*. (cleaned up) (citation omitted). This broad language incorporates more than USSIC's stringent interpretation would require, and even an incidental relationship is sufficient. Accordingly, the Court finds the application of a flammable epoxy substance at the point of ignition could conceivably fall within the ambit of property damage "resulting from" Winning Colors' activity.[2] Drawing all inferences in favor of the non-movant, the Court determines USSIC has not shown a sufficient basis for summary judgment on the duty to defend.

USSIC's basis for seeking summary judgment as to the second, third, and fourth causes of action are all based on its assertion that it has no duty to defend against the *Milford* and *Schild* Actions. To wit: USSIC argues there is no duty to indemnify because there is no duty to defend, and the Excess Policy does not apply because it follows "the same provisions, exclusions and

---

[2] Given the CGL Policy's broad causation language, the Court determines USSIC has not carried its burden at summary judgment on the duty to defend. Since the issue can be decided on the policy language alone, the Court does not reach the parties' arguments on concurrent causation.

United States District Court
Northern District of California

limitations that are contained in the applicable 'controlling underlying insurance.'" Dkt. No. 92-3 at 79. Since USSIC has failed to carry its burden as to the first cause of action, it similarly fails to carry its burden as to the remaining three, for which it offers no independent arguments warranting summary judgment.

## IV.     DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT

Defendants seek partial summary judgment on USSIC's first cause of action for declaratory judgment on its duty to defend the *Milford* and *Schild* Actions. For the reasons stated above, Defendants' motion is **GRANTED**. Defendants' have shown, as a matter of law, there is "potential for liability under the [CGL Policy].'" *Pension Tr. Fund for Operating Eng'rs*, 307 F.3d at 949 (citation omitted). Therefore, USSIC has a duty to defend in the underlying actions.

## CONCLUSION

Accordingly, USSIC's motion for summary judgment, or in the alternative, partial summary judgment, is **DENIED**. Defendants' motion for partial summary judgment as to the duty to defend is **GRANTED**.

The Court further sets the following schedule for the remainder of the case. Fact and expert discovery shall close on **March 27, 2026**. The pretrial conference shall be held on **May 7, 2026, at 11:00 a.m.** A two-day trial shall be held from **June 16, 2026**, through **June 17, 2026**.

Within 7 days of the issuance of this Order, the parties shall file a stipulation as to whether the case will be tried to a jury or shall proceed as a bench trial. Should the parties fail to reach a consensus, each side shall submit a brief articulating its position, not to exceed 3 pages each.

**IT IS SO ORDERED.**

Dated: February 17, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

16